## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT NILSEN ) | CASE NO. 3:23-cv-392 (KAD) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| SJV INTERNATIONAL GROUP INC. d/b/a ) | DECEMBER 5, 2024 |
| GO LEGAL DIGITAL AGENCY and ) | |
| STEVEN VASQUEZ in his individual ) | |
| and his official capacity, ) | |
| *Defendants*. ) | |

<u>MEMORANDUM OF DECISION</u>
**RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 56);**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF NO. 55)**

Kari A. Dooley, United States District Judge:

This action, commenced by Plaintiff Robert Nilsen, arises from a soured business relationship between Plaintiff and Defendants SJV International Group, Inc. d/b/a Go Legal Digital Agency (hereinafter, "SJV") and its principal Steven Vasquez ("Vasquez"). Plaintiff alleges that Defendants breached a series of agreements to provide "lead generation" campaigns for law firms across the country and misappropriated hundreds of thousands of dollars in client funds, which Defendant Vasquez used for his own personal gain. *See* Amended Complaint, ECF No. 32. Plaintiff asserts four claims: (1) breach of contract; (2) breach of fiduciary duty; (3) civil theft; and (4) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110, *et seq. Id.*

Pending before the Court are Plaintiff's Motion for Summary Judgment as to Defendant Vasquez ("Pl. MSJ"), as well as Plaintiff's Motion for Default Judgment as to Defendant SJV ("Pl. Default"). Defendant Vasquez did not file a response to the Motion for Summary Judgment. For the following reasons, the Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and the Motion for Default Judgment is **GRANTED in part**.

**Facts and Procedural History**

The following facts are taken from Plaintiff's Local Rule 56(a)(1) Statement of Undisputed Material Facts ("Rule 56 Statement," ECF No. 57), as well as the exhibits attached to Plaintiff's Motion for Summary Judgment. As Defendant Vasquez did not respond to the Motion for Summary Judgment or submit a Statement of Material Facts pursuant to Local Rule 56(a)(2), the facts set forth in Plaintiff's Rule 56 Statement are deemed admitted to the extent that they are supported by the record.[1]

Plaintiff owned and operated an advertising and marketing e-commerce business called All Media Agency ("AMA"). *See* Pl. MSJ, Declaration of Robert Nilsen ("Nilsen Decl."), Ex. 3, at ¶ 2; Rule 56 Statement at ¶ 2. Defendant Vasquez owns and operates SJV[2], an advertising and marketing business "focus[ing] on lead generation for law firms throughout the United States." Rule 56 Statement at ¶ 2. At some time prior to 2021, Plaintiff and Defendants entered into a series of agreements (hereinafter, the "Lead Generation Agreement") to "work together in providing the same advertising, marketing, and lead generation for law firms." *Id.* at ¶ 3. Pursuant to the Lead Generation Agreement, Plaintiff would enter into agreements with law firm clients (the "Client Agreements"), collect fees from those clients (the "Client Funds"), then "pay Defendants as subcontractors for services that Defendants agreed to perform per the [Lead Generation Agreement] in order to fulfill the Client Agreements." *Id.* at ¶ 4. The Client Funds were held by Defendants until the corresponding lead campaign was launched, and were used to pay "digital specialists" employed by Defendants to generate leads for the law firm clients. *Id.* at

---

[1] Plaintiff's Rule 56 Statement is supported exclusively by Requests for Admission that were served on Defendant Vasquez on May 10, 2024, to which Defendant Vasquez failed to respond. *See* Rule 56 Statement. As discussed below, in light of Defendant Vasquez's failure to respond, each of Plaintiff's Requests for Admission are deemed admitted.

[2] While Plaintiff's moving papers do not specify as much, the Court presumes that Defendant SJV is the "advertising and marketing business" referenced in Plaintiff's Rule 56 Statement and other submissions.

¶¶ 6–7.  The Client Funds advanced by Plaintiff were entrusted to Defendants for the specific purpose of performing the Client Agreements, and Defendants were not to use the Client Funds for any other purpose.  *Id.* at ¶¶ 8, 25.

Between October 2021 and August 2022, Plaintiff transferred $179,000.00 to Defendants' bank accounts "to be used to pay for the lead campaigns for various law firm clients," as well as $55,000.00 to pay "for future lead campaigns for individual law firms under contract," and $119,380.00 in Client Funds received from four law firm clients.  *Id.* at ¶¶ 13–15; *see also* Nilsen Decl., Ex. 3, at ¶ 3.  Defendants failed to perform as required by the Lead Generation Agreement.  Rule 56 Statement at ¶ 18.  Plaintiff learned of Defendants' failure to perform in May 2022, and thereafter demanded return of the Client Funds.  *Id.* at ¶ 10.

On July 20, 2022, August 19, 2022, August 24, 2022, and September 20, 2022, various law firm clients "charged back" the Client Funds initially disbursed to Plaintiff in connection with the Client Agreements.  *Id.* at ¶¶ 19–22.  Plaintiff later reached a confidential settlement with one of the law firm clients, in which he paid $7,300.00 "of his own personal funds."  *Id.* at ¶ 23.  Defendant Vasquez never provided Plaintiff "with an explanation or a full accounting of the monies in [Defendants'] possession that belongs to the law firm clients," and on each of the foregoing occasions, refused to return the outstanding Client Funds to Plaintiff.  *Id.* at ¶¶ 12, 19–23.  Instead, Defendant Vasquez used the Client Funds for his own purposes, and for his own personal gain.  *Id.* at ¶¶ 11, 17.  The combined total monies owed by Defendants to Plaintiff is $389,180.00.  *Id.* at ¶ 24.

On March 29, 2023, Plaintiff, then proceeding *pro se*, filed the Complaint.  *See* ECF No. 1.  On October 5, 2023, after retaining counsel, Plaintiff filed an Amended Complaint.  ECF No. 32.  On April 30, 2024, Defendant Vasquez filed his Answer to the Amended Complaint.  ECF

No. 50.  On May 9, 2024, after obtaining an entry of default, *see* ECF No. 49, Plaintiff filed a Motion for Default Judgment as to Defendant SJV.  ECF No. 55.  Defendant SJV has not sought to set aside the entry of default, or otherwise appeared or defended this action.  On July 30, 2024, Plaintiff filed a Motion for Summary Judgment as to Defendant Vasquez, to which, as noted, Defendant Vasquez did not respond. [3]  ECF No. 56.

**Standard of Review**

<u>Summary Judgment</u>

The standard under which courts review motions for summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id*. at 250.  As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial.  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (internal quotation marks omitted).  Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a

---

[3]  On August 29, 2024, consistent with the Court's instructions, *see* ECF No. 58, Plaintiff filed the Notice to Pro Se Litigant Pursuant to D. Conn. L. Civ. R. 56(b).  ECF No. 59.

genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

<u>Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. *See* Fed. R. Civ. P. 55. The two-step process requires first that "Plaintiff obtain an entry of default under Rule 55(a), by showing that the defaulting party 'has failed to plead or otherwise defend.' The second step is to seek a default judgment under Rule 55(b)." *Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 176 (D. Conn. 2020) (quoting

*Priestley v. Headminder Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (*per curiam*)) (quotation marks and internal citations omitted).

"It is well established that a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of S. Conn. Ltd. Partnership v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (internal quotation marks omitted) (citing *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). In civil cases, however, "where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). In making this determination and evaluating the allegations asserted against a defendant, the Court may "deem[] all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). The Court then assesses whether the allegations, deemed admitted, satisfy the elements necessary to establish liability. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

In considering whether to enter default judgment, courts consider a variety of factors, some of which may or may not be implicated by the particular case. These include: the possibility of prejudice to the plaintiff; the merits of the plaintiff's substantive claim; the sufficiency of the complaint; the sum of money at stake in the action; the possibility of a dispute concerning material facts; whether the default was due to excusable neglect (if known); and the strong policy favoring decisions on the merits. *See* 10 Moore's Federal Practice § 55.31[2] (3rd Ed. 2023); *see also, e.g.*, *Belcourt Public School Dist. v. Herman*, 786 F.3d 653, 661 (8th Cir. 2015); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016); *Rouse v. Broadway & Cooper LLC*, No. 23-CV-7849 (RER) (JAM), 2024 WL 4379070, at *4 (E.D.N.Y. Oct. 3, 2024)

("Courts have significant discretion in granting default judgments and consider the following factors: (1) whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.") (citation omitted).

**Discussion**

For the reasons set forth below, the Court finds that Plaintiff is entitled to summary judgment on liability only as to his breach of contract claim against Defendant Vasquez. The Court further concludes that Plaintiff has failed to establish his entitlement to summary judgment as to the remaining claims of breach of fiduciary duty, civil theft, and CUTPA.   Likewise, a default judgment as to liability only shall enter as to Defendant SJV on Plaintiff's breach of contract claim.

<u>Summary Judgment: Defendant Vasquez</u>

*Plaintiff's Requests for Admission*

On May 10, 2024, Plaintiff served Defendant Vasquez with twenty-five Requests for Admission ("RFAs").  *See* Rule 56 Statement at pp. 7–12.  Defendant Vasquez did not respond to any of Plaintiff's RFAs.  In turn, each of the purportedly undisputed material facts upon which Plaintiff's Motion for Summary Judgment relies derives from Plaintiff's Requests for Admission, which Plaintiff contends are deemed admitted by virtue of Defendant Vasquez's failure to respond.  Thus, as a threshold matter, the Court evaluates whether Plaintiff's RFAs are proper.

Rule 36 of the Federal Rules of Civil Procedure states that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or

opinions about either; and . . . the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Importantly, "Rule 36 admissions may be used for Rule 56 summary judgment." *SEC v. Batterman*, No. 00-CV-4835 (LAP), 2002 WL 31190171, at *5 (S.D.N.Y. Sept. 30, 2002). Nevertheless, "only proper requests for admission will be deemed admitted." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) (citing *Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973) ("Rule 36, by its express terms, embraces only requests for admissions of fact or of the application of law to fact . . . [t]o force the defendant to 'admit' [legal conclusions] would only frustrate the purposes for which Rule 36 was drafted."); *see also Madej v. Yale Univ.*, No. 3:20-CV-133 (JCH), 2020 WL 6270273, at *5 (D. Conn. Oct. 26, 2020) ("Rule 36 permits requests for admission addressed to law, but only as they relate to the application of law to fact.").

Here, the Court finds that each of Plaintiff's RFAs is proper. Though some of the RFAs might arguably run afoul of Rule 36 (*e.g.*, RFA #18 – "Defendants did not perform as required by the Agreement"), the Court is satisfied that the RFAs each seek admissions of fact and do not otherwise ask Defendant Vasquez to admit legal conclusions. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB) (SLC), 2020 WL 6290584, at *4 (S.D.N.Y. Oct. 27, 2020) (courts are "'invested with substantial discretion under Rule 36 to determine the propriety' of RFAs and corresponding answers and objections"). Accordingly, each of Plaintiff's RFAs are deemed admitted, and Plaintiff's Rule 56 Statement is established for purposes of Plaintiff's Motion for Summary Judgment.

*Count 1: Breach of Contract*

Turning to the merits, to prevail on his breach of contract claim, Plaintiff must establish: "(1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the opposing party; (4) direct and proximate cause; and (5) damages." *Henderson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-378 (JBA), 2017 WL 731780, at *6 (D. Conn. Feb. 21, 2017) (citing *McMann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–04 (2006)).

Here, the undisputed facts establish that Plaintiff and Defendant Vasquez entered the Lead Generation Agreement, and that Plaintiff performed under its terms, but Defendants did not. Defendant Vasquez refused to return the Client Funds procured by Plaintiff under the terms of the Lead Generation Agreement, and instead used them for his own personal gain. As a direct consequence of Defendants' failure to perform and refusal to return the Client Funds, Plaintiff incurred substantial monetary harm. Specifically, Plaintiff is now the subject of various law firm clients' efforts to "charge back" the Client Funds that were initially disbursed to Plaintiff in connection with the Client Agreements, and Plaintiff has reached at least one confidential settlement with a law firm client in which he paid $7,300.00 "of his own personal funds." Accordingly, Plaintiff is entitled to summary judgment on the breach of contract claim, but as to liability only.[4]

*Count 2: Breach of Fiduciary Duty*

Under Connecticut law, "[i]t is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." *Biller Assocs. v. Peterken*,

---

[4] As discussed below, Plaintiff has failed to adequately establish the amount of damages to which he is entitled. *See BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*, No. 19-CV-6386 (BCM), 2024 WL 4349163, at *7 (S.D.N.Y. Sept. 30, 2024) ("a court may grant partial summary judgment with respect to liability on a claim without granting summary judgment as to damages.").

269 Conn. 716, 723 (2004).  The existence of a fiduciary relationship, though dependent upon the unique facts of each case, is a question of law to be determined by the Court.  *See Iacurci v. Sax*, 313 Conn. 786, 795–96 (2014).  In determining whether a fiduciary relationship exists, courts have "recognized that some actors are *per se* fiduciaries by nature of the functions they perform [including] agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians."  *Id.* at 800 (internal quotation marks and citations omitted).  "Beyond these *per se* categories, however, a flexible approach determines the existence of a fiduciary duty, which allows the law to adapt to evolving situations wherein recognizing a fiduciary duty might be appropriate."  *Id.*  A fiduciary relationship "is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . [t]he superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him."  *Id.* (internal quotation marks omitted).  "The unique element that inheres a fiduciary duty to one party is an elevated risk that the other party could be taken advantage of—and usually unilaterally."  *Id.* at 801.  Significantly, "not all business relationships implicate the duty of a fiduciary."  *Id.* at 800 (internal quotation marks omitted).  Indeed, there is a "need to avoid assigning the serious, significant duties that are expected of a fiduciary to every business arrangement."  *Id.* at 801.

Here, the undisputed facts establish the nature of the parties' contractual relationship, but they do not establish that Defendant Vasquez owed Plaintiff a fiduciary duty.  Plaintiff asserts a fiduciary relationship in only a conclusory fashion, and, as is the case here, it is well-settled that a purely contractual relationship is insufficient on its own to establish a fiduciary relationship. *See Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 836 (2014) ("a mere

contractual relationship does not create a fiduciary or confidential relationship."). The details of the Lead Generation Agreement that are provided simply do not establish the existence of a "dominant party" or one with "superior knowledge, skill, or expertise." *See Iacurci*, 313 Conn. at 800. Rather, the purported "relationship of trust and confidence" here does not appear to be anything more than that which exists in a straightforward business arrangement. *See Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*, 255 Conn. 20, 41 (2000) ("[t]he fact that one business person trusts another and relies on [the person] to perform [his obligations] does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty.") (internal quotation marks omitted). Accordingly, the Motion for Summary Judgment is DENIED as to Plaintiff's breach of fiduciary duty claim.

### Count 3: Civil Theft

In Connecticut, civil theft makes liable for treble damages "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property." Conn. Gen. Stat. § 52–564. A civil theft claim under § 52–564 is an action in tort. *Hamann v. Carl*, 196 Conn. App. 583, 598 (2020). "Civil theft is synonymous with larceny as defined by Conn. Gen. Stat. § 53a–119." *Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*, 301 F. Supp. 3d 381, 391 (D. Conn. 2018) (citing *Hi–Ho Tower*, 255 Conn. at 44). Pursuant to § 53a–119, a person engages in larceny "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner." Conn. Gen. Stat. § 53a–119. As relevant here, larceny includes, but is not limited to: (1) embezzlement, which occurs when a person "wrongfully appropriates to himself or to another property of another in his care or custody"; and (2) obtaining property by false pretenses, which

11

occurs when, "by any false token, pretense or device, [a person] obtains from another any property, with intent to defraud him or any other person." *Id.* at §§ 119(1), (2).

Plaintiff argues that the undisputed facts demonstrate that Defendant Vasquez engaged in larceny through both embezzlement and false pretenses. In support of these claims, Plaintiff relies upon: (a) Defendant Vasquez's false representation that the Client Funds would be used for the purpose of performing under the Lead Generation Agreement; (b) Plaintiff's ensuing disbursement of $389,180.00 to Defendants; and (c) Defendant Vasquez's knowing and wrongful appropriation of those funds for personal purposes. The Court is not convinced, and finds that the material facts supporting this claim are largely conclusory and do not permit the Court to infer larcenous intent on the part of Defendant Vasquez. Additionally, while Defendant Vasquez may have failed to perform under the Lead Generation Agreement, "[a]s a general rule, a breach of contract claim is not actionable in tort in the absence of special additional allegations of wrongdoing which amount to a breach of a duty distinct from, or in addition to, the breach of contract." *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 332 F. Supp. 3d 488, 513–14 (D. Conn. 2018) (citation omitted). As discussed above, the initial burden is on the movant to establish his entitlement to judgment as a matter of law. *See PepsiCo, Inc.*, 315 F.3d at 105. Plaintiff has not met his burden on this sparce record. Accordingly, the Motion for Summary Judgment is DENIED as to Plaintiff's civil theft claim.

*Count 4: CUTPA*

CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b,

may bring an action" to recover actual damages, punitive damages, and equitable relief. Conn. Gen. Stat. 42–110g(a). Connecticut applies the Federal Trade Commission's so-called "cigarette rule" to determine whether a practice is unfair under CUTPA. *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119–120 (2d Cir. 2004). Under the cigarette rule, courts examine three factors: "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise[—]whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." *Id.* (quoting *Cheshire Mortgage Serv. Inc. v. Montes*, 223 Conn. 80, 105–106 (1992)). A plaintiff need not establish all three criteria to demonstrate unfairness, and a practice may be shown to be unfair either "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 120 (internal quotation marks omitted). The practice at issue may be "actually deceptive," or "'a practice amounting to a violation of public policy.'" *Id.* "Because CUTPA is a self-avowed 'remedial' measure, General Statutes § 42–110b (d), it is construed liberally in an effort to effectuate its public policy goals." *Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 756 (1984).

In cases involving claims of breach of contract, the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation. *See Ulbrich* v. *Groth*, 310 Conn. 375, 410 (2013); *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 777, *cert. denied*, 340 Conn. 911 (2021). However, it is equally clear that "not every contractual breach will rise to the level of a CUTPA violation." *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 228 (2010). Generally, there must also be present some

aggravating circumstances or unscrupulous conduct, in addition to a failure to meet contractual obligations. *Id.* at 229; *see also Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, 213 Conn. App. 445, 454 (2022) (discussing the relevant factors where CUTPA claim is premised on breach of contract.).

Here, the Court again observes that the undisputed facts establish only that Defendant Vasquez breached the Lead Generation Agreement, which is not sufficient on its own to establish a CUTPA violation. Plaintiff does not demonstrate—or even suggest—the requisite "aggravating circumstances or unscrupulous conduct" required to establish a CUTPA violation arising from an underlying breach of contract. *See Naples*, 295 Conn. at 229. Instead, Plaintiff asserts—without substantive analysis or citation to supporting case law—that Defendants "admitted that they misled the Plaintiff into sending the Client Funds while actually using these funds for Vasquez's own purposes." *See* Pl. MSJ at 8. However, Defendant Vasquez's eventual use of the Client Funds for his own unspecified personal purposes, does not, of itself establish that he intentionally "misled" or "actually deceived" Plaintiff in the entering into or execution of the Lead Generation Agreement. *See Fabri*, 387 F.3d at 120; *see also Stanley Works*, 332 F. Supp. 3d at 512 ("simple contract breach is not sufficient to establish a violation of CUTPA, particularly where the count alleging CUTPA . . . does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy.") (quoting *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1039 (2d Cir. 1995)). For the foregoing reasons, summary judgment is DENIED as to Plaintiff's CUPTA claim.[5]

---

[5] Because the Court is denying the Motion for Summary Judgment as to Plaintiff's CUTPA claim, Plaintiff is not entitled to the requested $10,370.00 award of attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d). *See* Pl. MSJ at 9.

Default Judgment: Defendant SJV

In the Amended Complaint, there are no allegations against Defendant SJV that are not also levied against Defendant Vasquez.  And the factual allegations in the Amended Complaint, now deemed admitted as to Defendant SJV, largely mirror the RFAs relied upon with respect to the Motion for Summary Judgment against Defendant Vasquez. Setting aside any legal conclusions, which are not deemed admitted, the allegations demonstrate that Defendant SJV, which is owned and operated by Defendant Vasquez, failed to perform under the Lead Generation Agreement, resulting in damages to Plaintiff.  Accordingly, for the reasons set forth above with respect to the Motion for Summary Judgment, a default judgment will enter against Defendant SJV on the breach of contract claim in Count One, but the Motion for Default Judgment is denied as to Counts Two (Breach of Fiduciary Duty), Three (Civil Theft) and Four (CUTPA).[6]

*Damages*

As discussed above, both the Motion for Summary Judgment and the Motion for Default Judgment are granted in part, and as to liability only.  In determining damages, "[t]he outer bounds of recovery allowable are of course measured by the principle of proximate cause. The default judgment d[oes] not give plaintiff a blank check to recover from defendant any losses it had ever suffered from whatever source. It could only recover those damages arising from the acts and injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158–59 (2d Cir. 1992) (internal brackets and citation omitted).  The damages sought must

---

[6] The Court has also considered the obvious prejudice to Plaintiff as a result of Defendant SJV's non-appearance, and the undisputed basis for the default.  *See Rouse*, 2024 WL 4379070 at *4.  While the Court recognizes the strong preference for matters to be decided on their merits, this preference does not preclude entry of a default judgment in this case and on this record.

be established "with reasonable certainty." *Transatlantic Marine Claims Agency, Inc.*, 109 F. 3d at 111.

On the present record, Plaintiff has not established that he is entitled to either the $389,180.00 he seeks in connection with his breach of contract claim against Defendant Vasquez, or the $686,471.73 plus punitive damages and attorney's fees claimed in connection with the default judgment against Defendant SJV.[7]  While the Court is satisfied that Plaintiff is entitled to compensatory damages against Defendants for their breach of the Lead Generation Agreement, the nature and extent of those damages has not been demonstrated to a reasonable certainty.  Plaintiff's statement of material facts indicates that: (a) Plaintiff transferred $353,380.00 to Defendants in connection with the Lead Generation Agreement, *see* Rule 56 Statement at ¶¶ 13–15; (b) various law firm clients "charged back" a total of $118,820.00, *see id.* at ¶¶ 19–22; and (c) Plaintiff paid $7,300.00 of his own personal funds to a law firm client in connection with a confidential settlement, *see id.* at ¶ 23.  Plaintiff also attaches to both his Motion for Summary Judgment and Motion for Default Judgment bank records indicating that between September 2021 and August 2022, Plaintiff wired $213,750.00 to Defendants.  *See* Pl. MSJ, Ex. A; Pl. Default, ECF No. 55-1, Declaration of Debt.  Plaintiff claims ten percent interest on those transfers in the amount of $45,221.73.  *See* Pl. Default at ¶ 5.  In sum, it is unclear how Plaintiff arrived at a claim for damages in the amount of $389,180.00.

**Conclusion**

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is GRANTED as to liability on Plaintiff's breach of contract claim against Defendant Vasquez, and Plaintiff's

---

[7] Preliminarily, the Court notes that the damage award as to each Defendant, whether by summary judgment or default judgment, will be the same and will be joint and several obligations for both. And insofar as the Court has denied summary judgment and default judgment as to Plaintiff's breach of fiduciary duty, civil theft and CUTPA claims, Plaintiff is not entitled to treble damages pursuant to Conn. Gen. Stat. § 52-564, nor is he entitled to attorneys' fees or punitive damages under CUTPA.

Motion for Default Judgment is GRANTED as to liability on Plaintiff's breach of contract claim against Defendant SJV.

A telephonic Status Conference is presently scheduled for **December 20, 2024 at 2:00 PM**, *see* ECF No. 62, at which the parties shall be prepared to address the procedure by which a determination of damages shall be made.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of December 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE